UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTRA-CELLULAR THERAPIES, INC., | Civ. No. 24-4264 (MAS)(JBD) (Consolidated) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| AUROBINDO PHARMA LTD., *et al.*, | |
| Defendants. | |

Before the Court in these consolidated actions is plaintiff's letter dated July 18, 2025, [Dkt. 165], and defendants' letter dated July 23, 2025, [Dkt. 169], addressing plaintiff's request to strike defendants' claim construction expert disclosure from the Joint Claim Construction and Prehearing Statement ("JCCS"). The Court heard oral argument on July 24, 2025, and denied plaintiff's request to strike on the record and in a brief written order issued thereafter. [Dkts. 171, 173.] The Court indicated that a more thorough explanatory opinion would issue in due course. *Id.* This is that opinion.

**I.   BACKGROUND**

In 2024 and early 2025, plaintiff commenced a series of patent infringement actions under the Hatch-Waxman Act in connection with the branded drug CAPLYTA®. The cases have been consolidated for pretrial purposes. *See* [Dkts. 22, 65, 106, 141].[1]

---

[1]   All docket citations refer to Civil Action No. 24-4264, the lead consolidated Action.

On August 8, 2024, the Court entered a Pretrial Scheduling Order pursuant to the Local Patent Rules that set dates for, among other things, the exchange of preliminary proposed claim constructions, the identification of intrinsic and extrinsic evidence, and *Markman* submissions. [Dkt. 43.] After several amendments to the Pretrial Scheduling Order—which, in most instances, the Court entered on consent and at the parties' request—the Court issued the Amended Pretrial Scheduling Orders governing the deadlines at issue in the present dispute. [Dkts. 98, 160.] The operative deadlines required the parties to (i) exchange preliminary proposed claim constructions and identify intrinsic and extrinsic evidence no later than June 25, 2025; (ii) meet and confer to narrow claim construction issues no later than July 1, 2025; (iii) identify intrinsic and extrinsic evidence opposing the proposed claim constructions no later than July 8, 2025; and (iv) file the JCCS by July 16, 2025. *Id.*

On June 16, 2025, the parties met and conferred on their proposed constructions and evidence in advance of their preliminary exchange of claim construction information. [Dkt. 169] at 3; [Dkt. 169-1] at 3-6. Following the meet and confer, and in response to plaintiff's suggestion that the parties forego expert testimony, defendants confirmed via email that they "plan[ned] to use one or more experts during the claim construction proceedings." [Dkt. 169] at 3; [Dkt. 169-1] at 2-3. Defendants did not, however, identify any experts or summarize the anticipated expert opinions at that time. [Dkt. 169-1] at 2.

Pursuant to the Amended Scheduling Order and Local Patent Rule 4.2(b), the parties first formally exchanged their preliminary proposed claim constructions and intrinsic and extrinsic evidence on June 25, 2025 (the "June 25 Disclosures"). [Dkt. 160]; [Dkt. 165] at 2; [Dkt. 165-1]; [Dkt. 165-2]; [Dkt. 169] at 3.  In their disclosure, defendants stated, among other things, that they "may rely" on extrinsic evidence, including "[e]xpert opinions and/or testimony regarding how a person of ordinary skill in the art would have read and understood the identified claim term based on the intrinsic and extrinsic evidence."  [Dkt. 165] at 2; [Dkt. 165-1] at 3-4; [Dkt. 169] at 3.  Defendants did not identify any experts by name or summarize the anticipated expert opinions at that time.  [Dkt. 165] at 2; [Dkt. 165-1].

After the exchange, the parties met and conferred on June 30, 2025 regarding certain portions of defendants' June 25 Disclosures, to which plaintiff objected. [Dkt. 165] at 2-3; [Dkt. 165-8]; [Dkt. 169] at 3.  More specifically, plaintiff asserted that "[d]efendants' June 25, 2025, identification of intrinsic and extrinsic evidence [wa]s not in compliance with the requirements of Local Patent Rule 4.2(b), and [d]efendants' deficient disclosures ha[d] prejudiced [p]laintiff's ability to identify responsive claim construction evidence pursuant to Local Patent Rule 4.2(c)." [Dkt. 165-8] at 1.  Plaintiff did not, however, raise any specific objection to defendants' expert disclosure.  [Dkt. 165-8]; [Dkt. 169] at 3.

Following the meet and confer, on July 3, 2025, defendants served an updated disclosure supplementing their June 25 Disclosures with additional specific citations to documents defendants intended to rely upon as intrinsic evidence (the "July 3

3

Supplemental Disclosures"). [Dkt. 165] at 3; [Dkt. 165-3]; [Dkt. 169] at 3. The portion of the supplement regarding experts, however, remained unchanged. *Id.* Indeed, like the June 25 Disclosures, the July 3 Supplemental Disclosures stated only that defendants "may rely" on "[e]xpert opinions and/or testimony regarding how a person of ordinary skill in the art would have read and understood the identified claim term based on the intrinsic and extrinsic evidence"—without identifying an expert or disclosing a summary of an expert's opinion. *Id.*; [Dkt. 165-3] at 7.

On July 7, 2025, plaintiff raised concerns about defendants' July 3 Supplemental Disclosures, asserting that "[d]efendants' disclosures continue to be in contravention of Local Patent Rule 4.2(b)," and that "[d]efendants ha[d] not made *any* changes to their identification of extrinsic evidence." [Dkt. 169] at 3; [Dkt. 169-2] at 3 (emphasis in original). But plaintiff again did not raise any specific objection to defendants' expert disclosure. *Id.* In response, defendants noted that plaintiff's disclosures suffered from the same alleged deficiencies that plaintiff complained were present in defendants' disclosures. [Dkt. 169] at 3; [Dkt. 169-2] at 2. No further supplements to the parties' opening disclosures appear to have been exchanged, and on July 8, 2025 and pursuant to Local Patent Rule 4.2(c), the parties exchanged their disclosures of intrinsic and extrinsic evidence in opposition to each other's proposed claim constructions (the "July 8 Responsive Disclosure"). [Dkt. 165] at 3; [Dkt. 165-4]; [Dkt. 165-5]; [Dkt. 169] at 3.

With claim construction disclosures ostensibly complete, the parties turned to the JCCS. Plaintiff provided defendants with a first draft of the JCCS on July 10, 2025. [Dkt. 165] at 3; [Dkt. 165-6]; [Dkt. 165-9] at 4; [Dkt. 169] at 4. Defendants responded with revisions to the draft JCCS on July 15, 2025; that revised draft for the first time identified their claim construction expert by name. [Dkt. 165] at 3; [Dkt. 165-7] at 15; [Dkt. 165-10] at 2; [Dkt. 169] at 4. But the description of the expert's opinion and anticipated testimony remained unchanged from defendants' earlier disclosures:

> Expert opinions and/or testimony by Dr. Craig Berridge regarding how a person of ordinary skill in the art would have read and understood the identified claim term based on the intrinsic and extrinsic evidence.

[Dkt. 165] at 3; [Dkt. 165-7] at 15; [Dkt. 169] at 4.

On July 16, 2025, plaintiff objected to defendants' expert disclosure, arguing that Dr. Berridge had not been timely identified in defendants' Rule 4.2 disclosures, and should therefore be excluded from the JCCS. [Dkt. 165] at 3; [Dkt. 165-10] at 1; [Dkt. 169] at 4. Defendants refused to withdraw Dr. Berridge as an expert, asserting that plaintiff "ha[d] been on notice of [d]efendants' intention to rely on expert testimony for claim construction since at least June 20, 2025," and that defendants had noted their intention to rely on an expert in their June 25 Disclosures and July 8 Supplemental Disclosures. [Dkt. 165] at 3; [Dkt. 165-11] at 10-11; [Dkt. 169] at 4. This dispute ensued.

5

## II. LEGAL STANDARDS

The Local Patent Rules, together with the Federal Rules of Civil Procedure, "apply to all civil actions filed in or transferred to this Court which allege infringement of a patent in a complaint, counterclaim, cross-claim or third-party claim, or which seek a declaratory judgment that a patent is not infringed, is invalid or is unenforceable." L. Pat. R. 1.2. "'The Local Patent Rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their case.'" *Razor USA LLC v. DGL Grp., Ltd.*, No. 19-12939 (MF), 2020 WL 3605296, at *2 (D.N.J. July 2, 2020) (quoting *King Pharms., Inc. v. Sandoz Inc.*, No. 08-5974 (DEA), 2010 WL 2015258, at *4 (D.N.J. May 20, 2010)). Indeed, "[t]he Patent Rules 'are designed to require the parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'" *Id.* (quoting *Celgene Corp. v. Natco Pharma Ltd.*, No. 10-5197 (SDW), 2015 WL 4138982, at *4 (D.N.J. July 9, 2015)). Consistent with these principles, "the New Jersey Local Patent Rules provide a schedule for the sequence of production related to claim construction, including the disclosure of expert evidence." *APP Pharms., LLC v. Ameridose, LLC*, Civ. No. 10-4109 (LHG), 2011 WL 6325975, at *1 (D.N.J. Dec. 6, 2011). Specifically, Local Patent Rule 4 establishes a reticulated, multi-step framework for the exchange of

information leading to the Court's construction of disputed claims. An overview of that process is set forth below.

In the first step, not at issue here, the parties exchange lists of claim terms that they believe require construction by the Court. L. Pat. R. 4.1(a). The parties then meet and confer to narrow or resolve any differences. L. Pat. R. 4.1(b).

Local Patent Rule 4.2 governs the next step in the process. No later than 21 days after the exchange of claim terms to be construed, the parties must simultaneously exchange their preliminary proposed constructions of those terms. L. Pat. R. 4.2(a). At the same time, the parties also must (i) identify all intrinsic evidence on which they intend to rely; (ii) identify all references from the specification or prosecution history on which they intend to rely; and (relevant here) (iii) "designate any supporting extrinsic evidence including, without limitation, dictionary definitions, citations to learned treatises and prior art[,] and testimony of all witnesses[,] including expert witnesses." L. Pat. R. 4.2(b). The rule expressly provides that "[w]ith respect to all witnesses including experts, the identifying party shall also provide a description of the substance of that witness'[s] proposed testimony that includes a listing of any opinions to be rendered in connection with claim construction." *Id.*

Once the parties exchange intrinsic and extrinsic evidence on which they intend to rely to support their proposed constructions, Local Patent Rule 4.2(c) gives each party an opportunity to respond to the other's evidence. L. Pat. R. 4.2(c). The rule provides that "[n]ot later than 14 days after the parties exchange the

7

'Preliminary Claim Constructions' . . . the parties shall exchange an identification of all intrinsic evidence and extrinsic evidence that each party intends to rely upon to oppose any other party's proposed construction, including without limitation, the evidence referenced in L. Pat. R. 4.2(b)." *Id.* Accordingly, "testimony of all witnesses[,] including expert witnesses, must be exchanged no later than 14 days after Preliminary Claim Constructions have been exchanged." *Source Search Techs., LLC v. Kayak Software Corp.*, Civ. No. 11-3388 (MAH), 2014 WL 46769, at *3 (D.N.J. Jan. 6, 2014). After this exchange, the rules direct the parties again to meet and confer for the purpose of narrowing the issues and presenting a JCCS to the Court. L. Civ. R. 4.2(d).

The next step is the JCCS—a roadmap for the claim construction hearing. Local Patent Rule 4.3 directs the parties to "complete and file a [JCCS]" within "30 days after the exchange of 'Preliminary Claim Constructions.'" L. Pat. R. 4.3. The JCCS must include, among other things, the parties' proposed constructions of each agreed-upon and disputed claim term; identification of the terms whose construction will be most significant to the resolution of the case; references to the identified intrinsic and extrinsic evidence to be relied upon; and the identity of each witness that a party proposes to call at the claim construction hearing. L. Pat. R. 4.3(a)-(c), (e). "[F]or each witness," the JCCS must also set forth "a summary of his or her testimony including, for any expert, each opinion to be offered related to claim construction." L. Pat. R. 4.3(e). Local Patent Rule 4.3(f)—which was added to the Local Patent Rules by amendment in 2011—directs that "[a]ny evidence

that is not identified under L. Pat. R. 4.2(a) through 4.2(c) inclusive shall not be included in the [JCCS]." L. Pat. R. 4.3(f). The Local Patent Rules thus empower courts to strike from the JCCS untimely or inadequately disclosed information during the disclosure process. *See, e.g., Bristol-Myers Squibb Co. v. Dr. Reddy's Lab'ys, Ltd.*, Civ. No. 19-18686 (MAS), 2021 WL 1820486, at *2-3 (D.N.J. May 6, 2021) (striking late-disclosed claim construction for violating the Local Patent Rules).

After filing the JCCS, the Local Patent Rules direct the parties to complete all non-expert discovery relating to claim construction within 30 days, and to file their opening *Markman* briefs and any evidence supporting claim construction within 45 days. L. Pat. R. 4.4, 4.5(a). Thereafter, the parties must complete discovery relating to any expert witnesses relied on in support of their claim construction briefing and evidence, and file responsive *Markman* briefs and any evidence supporting claim construction. L. Pat. R. 4.5(b)-(c). Finally, once *Markman* briefing and any expert discovery concludes, the Court holds a claim construction hearing, to the extent such a hearing "is necessary for construction of the claims at issue." L. Pat. R. 4.6.

Part Four of the Local Patent Rules thus "governs the claim construction phase of patent litigation, with an eye towards allowing for 'maximum consideration' of all evidence necessary for the judge 'to make an educated and informed decision' on the proper construction" of disputed claim terms. *Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*, 133 F. Supp. 3d 721, 728 (D.N.J. 2015) (quoting *Janssen Prods.,*

*L.P. v. Lupin Ltd.,* No. 10-5954 (WHW), 2013 WL 3772655, *3 (D.N.J. Jul. 16, 2013)). This is consistent with the general principle that the Local Patent Rules serve "to further the goal of full, timely discovery," *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.,* Civ. No. 12-952 (DMC), 2012 WL 5818143, at *3 (D.N.J. Nov. 14, 2012) (quoting *TFH Publ'ns. Inc. v. Doskocil Mfg. Co., Inc.,* 705 F. Supp. 2d 361, 366 (D.N.J. 2010)), and "ensure that parties are not prejudiced in effectively litigating their claims." *Novartis Pharms., Corp. v. Wockhardt USA LLC,* Civ. No. 12-3967 (SDW), 2013 WL 4732296, at *5 (D.N.J. Sept. 3, 2013)).

### III. DISCUSSION

Plaintiff argues that defendants' disclosure of their expert witness for claim construction violated the Local Patent Rules and should be struck from the JCCS—resulting in the preclusion of his testimony at the claim construction hearing. [Dkt. 165]; *see also* [Dkt. 173] at 4:25-14:9, 26:3-31:20. Specifically, plaintiff contends that defendants failed to designate an expert witness by name or adequately "describe the substance of their proposed expert testimony" in the June 25 Disclosures, the July 3 Supplemental Disclosures, and the July 8 Responsive Disclosures, despite their obligation to do so pursuant to Local Patent Rule 4.2(b)-(c). [Dkt. 165] at 4; *see also* [Dkt. 173] at 4:25-8:16, 11:17-13:13, 26:5-26:22. Relying on Local Patent Rule 4.3(f)—which provides that "[a]ny evidence that is not identified under L. Pat. R. 4.2(a) through 4.2(c) inclusive shall not be included in the [JCCS]"—plaintiff takes the unyielding position that any deficiencies during the Rule 4.2 disclosure process must result in the exclusion of the deficiently

10

disclosed evidence. [Dkt. 165] at 4-6 (citing *Source Search*, 2014 WL 46769, at *3-4, *6; *Shire LLC v. Amneal Pharms., LLC*, Civ. No. 11-3781 (CLW), 2013 WL 1932927, at *16-17 (D.N.J. May 7, 2013)); *see also* [Dkt. 173] at 4:25-14:9, 26:3-31:20. Accordingly, plaintiff argues that "[d]efendants' expert disclosure should be excluded" from the JCCS here. [Dkt. 165] at 4; *see also* [Dkt. 173] at 4:25-14:9, 26:3-31:20.

In response, defendants assert that they "timely provided their expert disclosure as contemplated under the Local Patent Rules at a level of detail that prior courts have found to comply with the Local Rules," and that "[p]laintiff **never** raised an objection or concern with [d]efendants' expert disclosure until the day the parties were to submit the JCCS." [Dkt. 169] at 5 (citing *APP Pharms*, 2011 WL 6325975, at *1; *Warner Chilcott Lab'ys. Ir. Ltd. v. Impax Lab'ys., Inc.,* Civ. Nos. 08-6304, 09-228, 09–0469, 09-1233, 09-2073 (MF), 2010 WL 339034, at *3 (D.N.J. Jan. 22, 2010)) (emphasis in original); *see also* [Dkt. 173] at 16:5-23:17. Defendants further contend that the prejudice to plaintiff, if any, can be easily cured by slight adjustments to the pretrial schedule. *Id.* at 6-7; *see also* [Dkt. 173] at 20:7-19, 23:20-25:21. Accordingly, defendants argue, "[p]laintiff's request for the extreme remedy of excluding [d]efendants' expert disclosure is unjustified and should be denied." *Id.* at 2 (citing *Warner Chilcott,* 2010 WL 339034, at *3); [Dkt. 173] at 16:5-24:7.

11

For the reasons set forth on the record on July 24, 2025, and as explained in more detail below, the Court declined to strike defendant's expert disclosure from the JCCS.

### A. Under The Circumstances, the Court Declined to Exercise its Discretion to Strike Defendants' Expert Witness From the JCCS.

As noted, Local Patent Rule 4.3(f) provides that "[a]ny evidence that is not identified under L. Pat. R. 4.2(a) through 4.2(c) inclusive shall not be included in the [JCCS]." L. Pat. R. 4.3(f). But the rule does not preclude the Court from exercising its discretion not to strike evidence in appropriate circumstances. To the extent that plaintiff argues that the 2011 addition of Local Patent Rule 4.3(f) eliminated or restricted the Court's discretion in this context, the Court rejects the argument.

While the Local Patent Rules "are not intended to create loopholes for parties to exploit," *Janssen Prods.*, 2013 WL 3772655, at *3, they are also "'not a straitjacket into which litigants are locked'" for all time, no matter the circumstances. *Novartis*, 2013 WL 4732296, at *4 (quoting *TFH Publ'ns*, 705 F. Supp. 2d. at 366 (internal citations omitted)). To the contrary, "a modest degree of flexibility [exists], at least near the outset." *Id.* (quoting *TFH Publ'ns,* 705 F. Supp. 2d. at 366). "[T]he decision of whether to allow certain expert testimony [thus] rests within the sound discretion of the district court." *Otsuka Pharm.*, 133 F. Supp. at 729 n.11 (citing *In re TMI Litig.,* 193 F.3d 613, 663 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000)).

Consistent with these principles, the Court does not agree that Local Patent Rule 4.3(f) mandates in all circumstances exclusion of any disclosure determined to violate Local Patent Rule 4.2(a) through 4.2(c). To be sure, Rule 4.3(f) expressly directs—and thus authorizes—courts to exclude inadequately disclosed evidence. But the rule does not limit the Court's preexisting flexibility and discretion not to strike such evidence, and to craft appropriate remedies short of exclusion. *See, e.g., Taro Pharm. Indus. Ltd. v. Novitium Pharma, LLC,* Civ. No. 19-1028 (FLW), 2020 WL 1673045, at *10 n.4 (D.N.J. Apr. 6, 2020) (noting that the remedy for a violation of Local Patent Rules 4.2 and 4.3 was unclear, and explaining that while the Court "f[ound] the [d]efendant's conduct unacceptable," plaintiff was not "prejudiced to such an extent that warrant[ed] exclusion of the [ ] evidence."). Here, the Court declined to strike defendants' expert disclosure after considering a number of relevant factors, including "(1) the prejudice or surprise to the party against whom the evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which permitting the evidence might disrupt the orderly and efficient administration of the case; (4) the bad faith or willfulness, if any, that accompanies the untimely disclosure; and (5) the overall importance of the evidence proposed for exclusion." *Otsuka Pharm.*, 133 F. Supp. at 729 n.11 (citing *Nicholas v. Pa. State Univ.,* 227 F.3d 133, 148 (3d Cir. 2000); *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997); *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904 (3d Cir. 1977), *overruled on other grounds, Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir. 1985).

*First*, the prejudice to plaintiff is minimal and was cured through minor adjustments to the pretrial schedule made during the July 24 hearing and in the written order issued thereafter.[2] Plaintiff argues that the prejudice here is significant because "[t]he parties would essentially need to redo the exchanges of intrinsic and extrinsic evidence" if defendants' disclosure is not struck, further compressing an already tight pretrial schedule. [Dkt. 165] at 6; [Dkt. 173] at 14:10-15:18, 31:3-16. That is not so. While this dispute caused some disruption to the Rule 4 process, the entire disclosure process did not need to be redone; the Court directed supplementation limited to the expert disclosure and made minor adjustments to the schedule, and there was enough room in the schedule to allow for it. *See, e.g., Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, Civ. No. 14-00876 (JSC), 2016 WL 7386136, at *6 (N.D. Cal. Dec. 21, 2016) (allowing plaintiff to amend infringement contentions where "the stage of the litigation alleviate[d] the prejudice" that defendant may suffer, as "[t]he case schedule provide[d] . . . sufficient opportunity to analyze, challenge, and rebut the assertions set forth in [plaintiff]'s amended infringement contentions."). Under the revised schedule, plaintiff also has been given an opportunity to disclose an expert of its own, conduct expert

---

[2]    The Court generally agrees with plaintiff's suggestion that "[p]rejudice is not *required* to hold [d]efendants to the Rules, because Local Patent Rule 4.3(f) is clear that undisclosed evidence 'shall not' be included in the JCCS." [Dkt. 165] at 6 (emphasis added); *see also* [Dkt. 173] at 13:15-14:9, 26:9-29:13. Nevertheless, courts routinely and properly consider prejudice in this context when determining whether to strike expert testimony. *See, e.g., Shire*, 2013 WL 1932927, at *3, *6-7, *11-12, *18; *Source Search*, 2014 WL 46769, at *5.

14

depositions, and submit responsive *Markman* briefing that can address defendants' anticipated expert testimony. *See* L. Pat. R. 4.

*Second*, while defendants' disclosure lacked an adequate description of their proposed expert testimony, plaintiff was expressly on notice as early as June 20, 2025 that defendants intended to rely on an expert during the claim construction hearing. *See* [Dkt. 169] at 3; [Dkt. 169-1] at 2. Yet plaintiff did not specifically object to the expert disclosure as deficient until defendants identified the expert by name. *See* [Dkt. 165] at 2-3; [Dkt. 165-6]; [Dkt. 165-8]; [Dkt. 165-9] at 4; [Dkt. 165-10] at 1; [Dkt. 169] at 3-4; [Dkt. 169-2] at 3. Although the burden rests on the disclosing party to comply with Rule 4's disclosure requirements, plaintiff had not been shy in challenging defendants' initial disclosures; in that context, the Court cannot help but observe that had plaintiff objected at the outset to defendants' expert disclosure, this dispute may never have arisen.

*Third*, quite unlike the cases on which plaintiff relies, this dispute arose during the Rule 4 disclosure process, and before the JCCS was filed or relied upon in later briefing. *Cf. Shire*, 2013 WL 1932927, at *5-18 (striking expert opinions first disclosed in defendants' responsive claim construction brief that were not previously identified in the JCCS and portions of plaintiff's claim construction briefing containing deficiently disclosed expert opinions); *Source Search*, 2014 WL 46769, at *4-6 (granting motion to strike where plaintiff gave no indication that it planned to rely on an expert until it filed an expert declaration in support of its responsive *Markman* brief); *Bristol-Myers Squibb*, 2021 WL 1820486, at *2 (striking new claim

15

construction that was not proposed until defendants filed their responsive *Markman* brief). Accordingly, and as explained above, the deficiency can be (and was) remedied without major disruption to the schedule or prejudice to either party.

*Fourth*, defendants point to—and appear to have relied on—case law from this Court finding expert disclosures like those here sufficient under the Local Patent Rules. *See* [Dkt. 169] at 2, 5-6 (citing *Warner Chilcott,* 2010 WL 339034, at *3 (declining to strike plaintiffs' expert disclosure, which stated that "Dr. McGinty will provide testimony on each disputed term consistent with a person of ordinary skill in the art")). The Court does not read *Warner Chilcott* generally to endorse the use of boilerplate expert disclosures and recognizes that the decision pre-dated the 2011 amendments to the Local Patent Rules, but the Court also appreciates that defendants may have believed their disclosure sufficient in light of the decision. This also factored into the Court's determination in this case that preclusion was not an appropriate remedy for defendants' inadequate disclosure.

Finally, the Court agrees with defendants that "the exclusion of important evidence is an extreme sanction employed only in the most drastic circumstances." *Warner Chilcott*, 2010 WL 339034, at *3 (citing *Meyers*, 559 F.2d at 904-05).[3] Because plaintiff had some notice that defendants intended to rely on an expert

---

[3] Although, as noted above, *Warner Chilcott* was decided before the 2011 amendments to Local Patent Rules 4.2(b) and (c) and 4.3(f), the Court still agrees with the proposition that striking expert testimony is an extreme sanction. *See, e.g.*, *Otsuka Pharm.*, 133 F. Supp. at 729 n.11 (noting that "exclusion constitutes a drastic and generally disfavored remedy" that "rests within the sound discretion of the district court.") (citation omitted); *Janssen Products,* 2013 WL 3772655, at *4 ("Recognizing that motions to strike are disfavored and usually denied.").

16

witness and any prejudice caused by the deficiencies in defendants' disclosures could be mitigated by minor adjustments to the schedule, the Court concluded that such a sanction was not warranted here. Accordingly, the Court exercised its discretion not to strike defendants' expert disclosure, but instead to direct them to supplement the disclosure consistent with the rules. *See APP Pharms*, 2011 WL 6325975, at *1-2 (finding a JCCS that only set forth the names of a party's proposed expert witnesses and described their testimony as "concerning, for example the interpretation of the disputed terms by a person of ordinary skill in the art and or/ordinary meaning of the disputed terms, including how the intrinsic evidence supports [the party's] proposed construction," was insufficient to meet the requirements of the Local Patent Rules, but giving party an opportunity to amend JCCS to come into compliance with the Rules); *see also Cambria Co. LLC v. Hirsch Glass Corp.*, Civ. No. 21-10092 (MAS), 2022 WL 4031422, at *8 n.9 (D.N.J. Sept. 2, 2022) (considering expert testimony over plaintiff's objection that defendant "waived the ability to rely on an expert by failing to disclose his expected testimony in time" where plaintiff "extensively incorporated" the testimony "into its *Markman* presentation and briefing").[4]

### B. Defendants' Expert Disclosure Did Not Comply With Local Patent Rule 4.2.

None of this, however, should be understood to endorse or approve defendants' expert disclosure in this case. To the contrary and to remove any doubt going

---

[4] Whether expert testimony at the claim construction hearing is necessary or appropriate is, of course, a separate decision for the District Judge.

17

forward, the disclosure plainly did not comply with the Local Patent Rules. Simply stating, as defendants did, that an unidentified expert "may" offer "opinions and/or testimony regarding how a person of ordinary skill in the art would have read and understood the identified claim term based on the intrinsic and extrinsic evidence," [Dkt. 165-1] at 3-4; [Dkt. 165-3] at 7; [Dkt. 165-7] at 15, says nothing at all. Boilerplate language like that is not consistent with the spirit of early disclosure that the Local Patent Rules are designed to promote. As discussed above, the District of New Jersey "promulgated [the Local Patent] Rules for the twin purposes of ensuring robust disclosure of all information necessary to litigate complex infringement actions and requiring parties to fully crystallize their theories of the case early in the litigation." *Otsuka Pharm.*, 133 F. Supp. at 727-28 (citing *TFH Publ'ns*, 705 F. Supp. 2d at 365; *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, Civ. No. 12-3289 (LHG), 2014 WL 997532, at *3 (D.N.J. Jan. 6, 2014), *aff'd*, Civ. No. 12-3289 (PGS), 2014 WL 1494592 (D.N.J. Apr. 16, 2014)) (cleaned up). The Local Patent Rules are thus intended to "'ensure litigants put all their cards on the table up front,'" and disclose early any *Markman*-related expert testimony. *Id.* at 728 (quoting *Voxpath,* 2012 WL 5818143, at *3).

 Disclosures like those here, which do not identify an expert by name and vaguely state that an opinion will be offered on claim construction, fail to provide "adequate notice of the expected testimony to be presented, and [are] therefore insufficient in light of the requirements of the Local Patent Rules." *APP Pharms.*, 2011 WL 6325975, at *1. Non-compliance can cause scheduling issues, delay, and

sometimes prejudice, undermining non-offending parties' ability to litigate their claims effectively. Rule 4.3(f) exists in appropriate circumstances to prevent those harms. Here, the effects of defendants' noncompliance were relatively minimal, and for the reasons explained above, the Court found it appropriate, in these circumstances, to direct defendants to supplement their expert disclosure and modify the claim construction schedule accordingly. That said, the parties and future litigants should be aware going forward that similarly deficient expert disclosures during the Rule 4 process risk being struck pursuant to Local Patent Rule 4.3(f).

## IV. CONCLUSION

For the reasons set forth above and those placed on the record on July 24, 2025, the Court denied plaintiff's request to strike defendant's expert disclosure from the JCCS, directed defendants to supplement their expert disclosure, and modified the operative scheduling order in respect of claim construction proceedings. [Dkt. 171.]

_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

19